IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D.K.R.,[1]

  **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social**
**Security Administration,**

  **Defendant.**

Case No. 21-1214-DDC

# MEMORANDUM AND ORDER

Plaintiff filed this action under 42 U.S.C. § 405(g), seeking judicial review of a decision by Commissioner of Social Security (the "Commissioner") to deny plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, as amended. Plaintiff has filed a brief asking the court to reverse the Commissioner's decision denying his claim and remand his claim to the Commissioner for a new administrative hearing. Doc. 11. The Commissioner has filed a response brief. It opposes plaintiff's request for judicial review and asks the court to affirm the Commissioner's decision. Doc. 14. Plaintiff did not file a reply, and the time to do so has passed.

The court concludes that the Administrative Law Judge (ALJ) failed to apply the correct legal standard. The court thus reverses the ALJ's decision, directs the Clerk to enter judgment

---

[1]   The court uses plaintiff's initials here as part of its efforts to preserve the privacy interests of Social Security plaintiffs.

under the fourth sentence of 42 U.S.C. § 405(g), and remands this case for further proceedings. The court explains why, below.

## I. Background

Plaintiff filed for Supplemental Security Income and Disability Insurance Benefits on June 25, 2019. Doc. 10-6 at 2–9 (AR 232–39). He alleged a disability onset date of June 8, 2017. Doc. 10-3 at 17 (AR 16). Plaintiff's application wound its way through preliminary proceedings and ended up before an ALJ for a hearing. The ALJ conducted a hearing on December 16, 2020, where plaintiff appeared and testified. *Id.* at 33 (AR 32).

On March 10, 2021, the ALJ issued a written decision concluding that plaintiff was not disabled, as the Social Security Act defines that term, from June 8, 2017, to the decision's date. *Id.* at 25–26 (AR 24–25). Plaintiff then filed a request for review with the Appeals Council of the Social Security Administration. *See id.* at 2 (AR 1). The Appeals Council denied plaintiff's request for review on July 9, 2021. *See id.* Plaintiff thus has exhausted the proceedings before the Commissioner and now seeks judicial review and reversal of the final decision denying him Disability Insurance Benefits and Supplemental Security Income.

## II. Legal Standard

### A. Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's denial of benefits is limited to two questions: Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal

standards.  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Federal courts evaluate an ALJ's factual findings under the substantial evidence standard. "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  The "threshold for such evidentiary sufficiency is not high." *Id.* at 1154.  Substantial evidence is "more than a mere scintilla." *Id.* (internal quotation marks and citations omitted). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).  While the federal courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted). But also, they do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When the courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* (citation omitted).  "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "'appropriate circumstances'"—applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing general rule set out in *Glass*). Some errors are harmless and thus require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

**B.     Disability Determination**

Claimants seeking Disability Insurance Benefits and Supplement Security Income bear the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and 20 C.F.R. § 416.920 (governing claims for Supplemental Security Income)). As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two,

> whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point that the claimant is (or is not) disabled. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

**III.   Discussion**

The ALJ found that plaintiff has a severe impairment: schizophrenia, alternatively diagnosed as schizoaffective disorder. Doc. 10-3 at 17 (AR 16). But, the ALJ concluded that plaintiff's impairment does not meet the severity of one of the listed impairments in 20 C.F.R. pt. 404. *Id.* Instead, the ALJ determined, plaintiff has the RFC "to perform a full range of work at all exertional levels" with some nonexertional limitations. *Id.* at 19 (AR 18). Specifically, the ALJ found that plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff's] work is limited to simple and routine tasks. His work should be in a low-stress job, defined as having only occasional changes in the work setting. His work should not be in a

5

> fast paced type of job. He should have no interaction with the public. He should have only occasional interaction with supervisors and co-workers, with no tandem tasks.

*Id.* Given plaintiff's age, education, work experience, and RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that" plaintiff can perform, as delineated in 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a). *Id.* at 24 (AR 23).

### A.     *Frey* test

The ALJ based his decision, in part, on plaintiff's failure to comply with medication directives. *Id.* at 23 (AR 22) ("There is nothing persuasive in the record to suggest that [plaintiff] is incapable of simple, routine tasks in a low-stress working environment not involving close interaction with others with sobriety and medication compliance."). In *Frey v. Bowen*, the Tenth Circuit provided a four-part test than an ALJ must apply when "reviewing the impact of a claimant's failure to undertake treatment . . . :  (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse." 816 F.2d 508, 517 (10th Cir. 1987). In *Frey*, the ALJ discredited plaintiff's allegations of pain by relying, in part, on claimant's failure to take pain medication. *Id.* Our Circuit held that the ALJ had erred by relying on that failure because two physicians had indicated that plaintiff couldn't take pain medication due to its side effects—stomach irritation. *Id.*

Plaintiff argues that, because the ALJ discounted plaintiff's allegations of his impairments based on his failure to take his medication, the governing law required the ALJ to apply the *Frey* test. Doc. 11 at 22. The Commissioner argues that the ALJ merely considered "noncompliance as one factor among many in evaluating Plaintiff's subjective statements" so the ALJ was not required to apply the *Frey* test. Doc. 14 at 11. To determine whether the *Frey* test

applies here, the court examines the relevant caselaw. First, the court reviews the cases cited by the Commissioner, which the court refers to as the "*Qualls* Line" of cases. Then, the court reviews the cases cited by plaintiff, which the court labels the "*Thompson* Line" of cases.

### 1. The *Qualls* Line

Our Circuit clarified the *Frey* test's applicability in *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). *Qualls* concerned plaintiff's reports of pain, and the ALJ discredited plaintiff's reports because plaintiff didn't take pain medication for allegedly severe pain. *Id.* Plaintiff argued that the ALJ should have applied the *Frey* test, but the Circuit disagreed "because *Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment." *Id.* Instead, the Circuit held that the ALJ "properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling." *Id.*

The Commissioner cites *Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016). In *Johnson*, the plaintiff had degenerative disc disease, and testified that "his condition left him unable to sit, stand, or walk long enough to engage in substantial gainful activity." *Id.* at 773. But the "ALJ did not consider [plaintiff] to be credible, in particular because of his repeated failure to comply (or comply in timely fashion) with [the orthopedic surgeon's] exercise and physical therapy recommendations[.]" *Id.* at 774. The Circuit held the *Frey* test did not apply. It explained that when

> noncompliance with prescribed treatment is invoked not as independent basis for denying disability but only as a factor diminishing the credibility of a claimant's allegations of the severity of symptoms prompting the treatment, the ALJ need not also find the forgone treatment would have restored the claimant's ability to work.

*Id.* (citing *Qualls*, 206 F.3d at 1372).

7

The Commissioner also cites *Thomas v. Berryhill*, 685 F. App'x 659, 663 (10th Cir. 2017). There, the ALJ gave the most weight to a doctor's opinion that plaintiff's condition could improve with physical therapy. *Id.* Plaintiff argued that, before using the medical opinion, the ALJ should have "analyze[d] the factors discussed in 20 C.F.R. § 416.930, which addresses whether disability should be denied because a claimant failed to follow prescribed treatment." *Id.* The Circuit disagreed with plaintiff, holding that the ALJ did not base his decision on plaintiff's failure to follow prescribed treatment; instead, at "most, [the ALJ] took it into account when evaluating the credibility of [plaintiff's] complaints." *Id.* (citing *Qualls*, 206 F.3d at 1372).

In sum, based on the *Qualls* Line of cases—*i.e.*, *Qualls*, *Johnson*, and *Thomas*—the Commissioner argues that the ALJ did not need to apply the *Frey* test to this case. The Commissioner asserts that the "ALJ did not deny Plaintiff's claim for benefits because he was not compliant with prescribed treatment, but instead considered that noncompliance as one factor among many in evaluating Plaintiff's subjective statements[.]" Doc. 14 at 11. With that background about the Commissioner's view of *Frey*, the court now turns to plaintiff's argument.

### 2. The *Thompson* Line

Plaintiff relies on cases that the court—for simplicity—refers to as the "*Thompson* Line" of cases. Our Circuit applied the *Frey* test in *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir 1993). *Thompson* appears to contradict *Qualls*. In *Thompson*, the ALJ had discredited plaintiff's "allegations of disabling pain . . . because she was neither pursuing medical treatment nor taking prescription medication." *Id.* at 1489. Our Circuit reversed the ALJ's decision and explained that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility," the ALJ should consider the *Frey* test. *Id.* at 1490.

8

Fortunately, other cases have synthesized the seeming contradiction between *Qualls* and *Thompson*. In *Goodwin v. Barnhart*, our Court concluded:

> The court has no trouble reading *Qualls* so as to be consistent with *Thompson*. The claimant in *Qualls* argued that the ALJ erred in relying on plaintiff's failure to take medication for severe pain because there was evidence that he took pain pills from friends and because the ALJ did not have the evidence necessary to consider the *Frey* factors. As the Tenth Circuit observed, the credibility issue in *Qualls* was not whether the claimant had refused to follow prescribed treatment but whether he had attempted to relieve his pain, including whether he took pain medication. Thus, the panel in *Qualls* did not consider the rule from *Thompson*, as the ALJ had not denied benefits because the claimant had refused to follow prescribed treatment.

195 F. Supp. 2d 1293, 1296 (D. Kan. 2002) (quotation cleaned up). Other courts have reached a similar conclusion. *See Heggie v. Berryhill*, No. 17-1013-JWL, 2018 WL 658712, at *3 (D. Kan. Feb. 1, 2018) (collecting cases).

As in this case, *Heggie* concerned a plaintiff's failure to comply with mental health treatment—he failed to take his psychiatric medication. *Id.* at *3–4. While "evaluating the credibility of Plaintiff's allegations of symptoms resulting from his impairments, the ALJ found that he regularly stopped taking his medications despite repeatedly reporting they were effective because he forgot to go in and pick them up and because he did not see the point in taking them." *Id.* at *3 (quotation cleaned up). And "the ALJ found that Plaintiff's prescribed psychiatric medication was generally effective but the claimant regularly did not take it, which shows that the claimant himself does not find his mental symptoms so severe and disabling as to require continuing the treatment and medication prescribed for him." *Id.* (quotation cleaned up). The court reversed the ALJ and remanded because the ALJ had failed to consider all four parts of *Frey*'s test. *Id.* at *4. The court noted that the ALJ had addressed part of the *Frey* test because, the ALJ concluded, "Plaintiff failed or refused to follow prescribed treatment without justifiable excuse[.]" *Id.* But *Heggie* concluded that ALJ had failed to consider the first part of the *Frey*

9

test: "whether the medication would restore Plaintiff's ability to work." *Id.* The ALJ had acknowledged that plaintiff was diagnosed with bipolar depression and an anxiety disorder and had a history of schizophrenia. *Id. Heggie* also faulted the ALJ for failing to consider whether plaintiff's failure to take his medication resulted from his mental impairment itself and was, therefore, justifiable. *Id.*

Plaintiff also cites *Jelena R. v. Saul*, No. 19-1194-JWL, 2020 WL 2101294 (D. Kan. May 1, 2020). In *Jelena*, the ALJ discounted plaintiff's allegations of disabling symptoms because the allegations were inconsistent with the record—including evidence that plaintiff hadn't taken her medications. *Id.* at *3. On appeal to the district court, plaintiff argued that the ALJ should have applied the *Frey* test. *Id.* at *4. The district court agreed, concluding that the ALJ had applied the wrong legal standard. *Id.* It explained that "Plaintiff was receiving medication and attending therapy in an attempt to relieve her mental health symptoms and that her condition improved when she was compliant with recommendations and, by negative implication, that it worsened when she was noncompliant." *Id.* The district court held that this "is precisely the situation to which the Tenth Circuit has found that *Frey* applies[.]" *Id.* And so, the court reversed and remanded the case. *Id.* at *5.

Plaintiff also invokes *K.S. v. Saul*, No. 20-1253-JWB, 2021 WL 2338250, at *5 (D. Kan. June 8, 2021). In *K.S.*, the ALJ determined the severity of plaintiff's mental impairments by looking at plaintiff's conservative treatment and medication history. *Id.* The ALJ discounted plaintiff's allegations of debilitating mental health symptoms because her allegations weren't consistent with the evidence. *Id.* The ALJ asserted that plaintiff had "at times been noncompliant with treatment and/or medication, with the record noting that she was out of her depression medication," and also noted that "when she [was] compliant, she ha[d] at times

10

reported improvement with conservative medication management, reporting that she [was] doing good and her depression [was] better." *Id.* (quotation cleaned up). Deciding the appeal in *K.S.*, the district court found that *Frey* applied to the ALJ's reliance on treatment compliance to discredit plaintiff's allegations, and the ALJ's failure to apply *Frey* required the court to remand the case. *Id.* at *6.

In sum, the court must apply the *Frey* test "when an ALJ finds that a claimant has refused to follow prescribed treatment including taking prescribed medication[.]" *Jelena*, 2020 WL 2101294, at *4. But the court need not apply the *Frey* test "when the ALJ is merely considering a claimant's attempts to relieve [his] symptoms." *Id.*

  **B.**  **Whether the *Frey* Test Applies Here**

The court concludes that this case is like the *Thompson* Line of cases, so the *Frey* test applies. The ALJ found that the schizophrenia "could reasonably be expected to cause some symptoms[.]" Doc. 10-3 at 20 (AR 19). But the ALJ discounted plaintiff's statements about "the limiting effects of these symptoms" because the statements were "not entirely consistent with the evidence in the record[.]" *Id.* The ALJ acknowledged that plaintiff's treatment plan included prescription medication and summarized, in detail, plaintiff's medication struggles. *See, e.g., id.* ("He reported [in February 2016] that Abilify completely eliminated his paranoia until shortly before he was due for his next dose."); *id.* ("These [July 2016] notes suggest that the claimant's mental health symptoms were adequately controlled with Abilify."); *id.* at 21 (AR 20) ("The claimant admitted that he had stopped taking his medication one week prior to the incident [in May 2018.]"); *id.* ("[Plaintiff] was stabilized on Invega [at a hospital in June 2018.]"); *id.* ("Treatment notes dated September 2018 indicate that the claimant was obtaining good results with the introduction of Vraylar[.]"); *id.* ("The claimant continued to be non-compliant with his

11

medications [in 2018.]"); *id.* at 22 (AR 21) ("In April 2019, the claimant reported not taking his Abilify for two months and not sleeping for three days[.]"); *id.* ("The claimant reported doing much better with medication compliance in June 2019[.]"); *id.* ("Though [plaintiff] stated [in January 2020] that Zyprexa had been the most effective medication for his auditory hallucinations, he stated that he was still hearing voices daily."); *id.* ("Lexapro was added to his medication regimen [in May 2020], but he stated that he had not yet obtained the medication due to an inability to afford the copayment[.]"); *id.* ("In June 2020, the claimant reported that although he had still not picked up his Lexapro, his moods had been 'pretty even[.]'"); *id.* ("In July 2020, [plaintiff] reported that Lexapro made his hallucinations worse, so he stopped taking it after two days[.]"). And the ALJ concluded that plaintiff's "medication non-compliance and substance abuse [were] the primary factors affecting his ability to achieve optimum symptom control." *Id.* at 23 (AR 22). The ALJ found "nothing persuasive in the record to suggest that [plaintiff] is incapable of simple, routine tasks in a low-stress working environment not involving close interaction with others with sobriety and medication compliance." *Id.* Thus, the ALJ acknowledged, "medication was prescribed to Plaintiff and [he] had periods in which [he] did not take the medication." *K.S.*, 2021 WL 2338250, at *6. And, the ALJ "then discusse[d] this noncompliance when evaluating Plaintiff's subjective complaints." *Id.* So, the ALJ should have applied the *Frey* test because the "ALJ [found] that a claimant [had] refused to follow prescribed treatment including taking prescription medication." *Jelena*, 2020 WL 2101294, at *4.

The *Frey* test required the ALJ to evaluate: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse." 816

12

F.2d at 517.  Plaintiff argues that the ALJ failed to follow steps one and four of the *Frey* test.  Doc. 11 at 25.  And plaintiff is right.

The ALJ never addressed "whether the treatment at issue would restore [plaintiff's] ability to work[.]"  *Frey*, 816 F.2d at 517.  The ALJ reviewed plaintiff's medication roller coaster.  But he did not consider whether any of the medications would restore plaintiff's ability to work.  Indeed, the ALJ acknowledged that plaintiff's medication dulls his auditory hallucinations, "but does not completely eliminate them."  Doc. 10-3 at 19 (AR 18).  The ALJ also recounted plaintiff's September 2018 treatment.  *Id.* at 21 (AR 20).  The ALJ noted that plaintiff, during September 2018, "was obtaining good results with the introduction of Vraylar[.]"  *Id.*  But the ALJ acknowledged that plaintiff's "intelligence appeared to be below average, he was a poor historian and his insight and judgment were poor[.]"  *Id.*  Thus, despite "obtaining good results with Vraylar," plaintiff showed low intelligence, poor recall, poor insight, and poor judgment.  *Id.*  So, it's not at all clear from the ALJ's opinion whether the prescribed treatments would restore plaintiff's ability to work.

The ALJ also failed to consider "whether the refusal was without justifiable excuse."  *Frey*, 816 F.2d at 517.  This case is like *Heggie*, where "the ALJ recognized that Plaintiff was diagnosed with a variety of mental impairments including bipolar depression, history of schizophrenia, and anxiety disorder."  2018 WL 658712, at *4 (quotation cleaned up).  The court remanded the case because the ALJ had failed to apply the *Frey* test—specifically, the ALJ had failed to consider "whether Plaintiff's forgetting his medications or failing to see the point of taking them may be the result of his mental impairment itself and therefore justifiable[.]"  *Id.*  Likewise, here, the ALJ recognized that plaintiff was diagnosed with schizophrenia.  Doc. 10-3 at 17 (AR 16).  And, the ALJ failed to consider whether plaintiff's lack of compliance was

13

justifiable. The ALJ acknowledged that plaintiff, at times, couldn't get Lexapro because he couldn't afford it. *Id.* at 22 (AR 21). And the ALJ discussed ample evidence of plaintiff's never fully resolved paranoia and hallucinations. *Id.* at 19 (AR 18) (noting that plaintiff's medication "does not completely eliminate" plaintiff's auditory hallucinations); *id.* at 20 (AR 19) (noting plaintiff reported paranoia and auditory hallucinations without mention of medication in March 2018); *id.* at 22 (AR 21) (noting that, though Zyprexa proved effective for his auditory hallucinations, plaintiff still heard voices daily in January 2020); *id.* (noting that in July 2020, plaintiff reported that Lexapro made his hallucinations worse, so he stopped taking it). Also, the ALJ noted that plaintiff had presented with poor insight and judgment. *Id.* at 21 (AR 20). The court can find no consideration in the ALJ's opinion whether plaintiff's failure to comply with his medication "was without justifiable excuse." *Frey*, 816 F.2d at 517.

The governing standard directs the court to determine whether the Commissioner applied the correct legal standard. *Noreja*, 952 F.3d at 1177 (10th Cir. 2020). The ALJ did not do so here, failing to apply the *Frey* test. The court thus remands this case for the ALJ to evaluate the credibility of plaintiff's allegations properly.[2]

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income is reversed. The court directs the Clerk to enter Judgment under the fourth

---

[2] The court cannot say the ALJ's error was harmless. The ALJ found plaintiff had just one severe impairment: schizophrenia. And the ALJ discounted plaintiff's account of his symptoms because the ALJ found that plaintiff failed to take his medication for his schizophrenia. The ALJ's error undermines the court's confidence in the result of the case. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("[T]his court has held that certain technical errors were minor enough not to undermine confidence in the determination of the case." (quotation cleaned up)). And, applying the proper legal standard will require the ALJ to consider additional evidence—for example, whether plaintiff's failure to take his medication was justifiable. The court thus concludes that the ALJ's failure to apply the *Frey* test was not harmless.

sentence of 42 U.S.C. § 405(g) and remands the case for further proceedings consistent with this opinion.[3]

**IT IS SO ORDERED.**

**Dated this 12th day of August, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

---

[3] Plaintiff asks the court to award him costs and attorney's fees. Doc. 11 at 30. The Equal Access to Justice Act provides that a court must award "fees and other expense" to "a prevailing party other than the United States[.]" 28 U.S.C. § 2412(d)(1)(A). The "party seeking attorney fees bears the burden of proving that [the] request is reasonable and must 'submit evidence supporting the hours worked.'" *Martin v. Colvin*, 198 F. Supp. 3d 1248, 1251 (D. Kan. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Plaintiff has not submitted any evidence about the hours worked by his attorney in his briefing. The court, at this time, thus denies this request without prejudice.